In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 18-2377 and 18-2463

MAO-MSO RECOVERY II, LLC, *et al.*,

*Plaintiffs-Appellants,*
*Cross-Appellees,*

*v.*

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

*Defendant-Appellee,*
*Cross-Appellant.*

APPEAL OF: CHRISTOPHER L. COFFIN, *et al*.

———————————

Appeals from the United States District Court for the
Central District of Illinois.
No. 17-1541 — **Joe Billy McDade**, *Judge.*

———————————

ARGUED JANUARY 14, 2019 — DECIDED AUGUST 15, 2019

———————————

Before WOOD, *Chief Judge*, and BRENNAN and ST. EVE,
*Circuit Judges.*

WOOD, *Chief Judge*. When all the dust is cleared away, this
case is relatively straightforward: we must review a dismissal
for lack of Article III standing and the imposition of sanctions

under Rule 11. Only the factual backdrop is complex, as it deals with one aspect of the federal Medicare program. The Plaintiffs assert that they are assignees of certain private insurers called Medicare Advantage Organizations, which provide Medicare benefits. They brought a putative class action against State Farm Mutual Automobile Insurance Company in an effort to recover payments State Farm allegedly should have made to them as reimbursement for certain medical costs. The district court dismissed the action with prejudice, although the basis for the dismissal was lack of standing. In addition, the court imposed sanctions under Rule 11 of the Federal Rules of Civil Procedure against one of the plaintiffs, MSP Recovery Claims, Series LLC, and its attorneys.

Plaintiffs, MAO-MSO Recovery II, LLC; MSP Recovery, LLC; MSPA Claims 1, LLC; and MSP Recovery Claims, Series LLC MSP ("Recovery Claims"), appealed. They argue that the court erred in its standing analysis, and that in any event it should not have dismissed the case with prejudice. Recovery Claims and the attorneys (Christopher Coffin, David Hundley, and Courtney Stidham) appealed the sanctions order. Finally, State Farm cross-appealed in order to preserve its alternative argument in favor of affirmance—that the case should be dismissed on the merits because plaintiffs failed to state a claim upon which relief can be granted. See *Matushkina v. Nielsen*, 877 F.3d 289, 297 (7th Cir. 2017) (noting that "[a]s a general rule, where a defendant has won dismissal for lack of standing or some other jurisdictional ground, modifying the judgment to dismissal on the merits" requires a cross-appeal).

We conclude that the district court erred insofar as it dismissed plaintiffs' case with prejudice, when the problem

was a fundamental lack of Article III standing. But this victory gets the plaintiffs only so far. The court acted well within its discretion when it denied plaintiffs a third opportunity to cure the defects in their pleadings. The court's order, in substance, was a jurisdictional dismissal with denial of leave to amend. So understood, we affirm the judgment and correct the record to reflect that the dismissal is without prejudice. We also dismiss State Farm's cross-appeal. Finally, we find that the district court exceeded the bounds of its discretion when it imposed Rule 11 sanctions on Recovery Claims and its attorneys.

# I

Although the issues before us are ultimately procedural, some background on Medicare is helpful to place them in context. Medicare is "the federal health insurance program for people who are 65 or older," as well as for certain other groups. See https://www.medicare.gov/what-medicare-covers/your-medicare-coverage-choices/whats-medicare. While many Americans receive benefits directly from the government through Medicare Parts A and B, others receive their benefits from private entities known as Medicare Advantage Organizations, pursuant to Medicare Part C. 42 U.S.C. § 1395w-21(a). For each Medicare enrollee covered by a Medicare Advantage Organization, the Organization receives a per capita reimbursement from the federal government. The amount of that reimbursement may vary according to the characteristics of the individual enrollees and other factors. See *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 364–65 (3d Cir. 2012). The Medical Advantage Organizations assume the financial risk of insuring their enrollees. *Id.*

One other piece of Medicare vocabulary is important to this case: the difference between "primary" and "secondary" payments. When an enrollee is covered directly by the government (under Medicare Parts A and B), Medicare is statutorily barred from making payments for medical costs when an enrollee has benefited or is likely to benefit from some other insurance or worker's compensation plan. The statute mentions such alternative sources of benefits as "a workmen's compensation law … or … automobile or liability insurance policy or plan (including a self-insured plan) or … no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii). In such situations, Medicare is a secondary form of coverage that applies only to costs not covered by the primary insurance. But if a primary insurer fails to pay, the government does not leave the enrollee and her medical providers in the lurch. Rather, it makes conditional payments to providers and then seeks reimbursement from the primary insurer. *Id.* § 1395y(b)(2)(B)(i). An analogous provision in Medicare Part C makes the private Medicare Advantage Organizations secondary payers where enrollees have some form of primary coverage. *Id.* § 1395w-22(a)(4). When the primary insurers fall down on their responsibilities, Medicare Advantage Organizations are authorized by statute to pay first and seek reimbursement later, just as the government may. *Id*.

Sometimes, however, the primary insurer never reimburses the secondary payer (be it the government or a Medicare Advantage Organization) for benefits it should have provided. In that case, the Medicare Secondary Payer provisions establish a private right of action that permits *some* private plaintiffs to sue for double damages. But the relevant section of the statute does not specify who may take advantage of that provision. All it says, without further

elaboration, is that "[t]here is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." *Id.* § 1395y(b)(3)(A).

The plaintiffs in this case are not themselves Medicare Advantage Organizations; they assert instead that they are assignees of claims that originally belonged to such entities. They argue that Medicare Advantage Organizations are among the proper plaintiffs that can exercise this private right of action, and that through the assignments, they stand in the shoes of those Organizations. The plaintiffs and related entities have pursued this theory not just in this litigation, but in several suits throughout the country. See, *e.g.*, *MAO-MSO Recovery II, LLC v. Gov't Employees Ins. Co.*, No. PWG-17-711, 2018 WL 999920 (D. Md. Feb. 21, 2018); *MAO-MSO Recovery II, LLC v. Am. Family Mut. Ins. Co.*, No. 17-CV-175-JDP, 2018 WL 835160 (W.D. Wis. Feb. 12, 2018). At the same time as it granted State Farm's motion to dismiss the First Amended Complaint for lack of standing in this case, the district court agreed with the plaintiffs that the statute does support a private right of action for Medicare Advantage Organizations. In that respect, it relied on rulings from the Third and Eleventh Circuits. See *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1238 (11th Cir. 2016); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 355 (3d Cir. 2012). Although State Farm did not challenge this point in the district court, it has changed its tune on appeal and now argues that the private right of action does *not* extend to Medicare Advantage Organizations. Those entities, State Farm contends, must look to contract law for appropriate

remedies. This dispute is at the heart of State Farm's cross-appeal.

Plaintiffs' efforts in the present case foundered, however, when the district court found that they did not have valid assignments from any Medicare Advantage Organization that made unreimbursed payments. Without the link to a proper Organization that possessed claims to reimbursement, the court concluded, plaintiffs had no injury for which they could seek redress on this or any other legal theory. Accordingly, it ruled, no matter the scope of the private right of action, *these* plaintiffs lacked standing to sue. We come to the same conclusion. We save for another day the question whether a Medicare Advantage Organization or a proper assignee of its rights may invoke the Medicare Secondary Payer private right of action for double damages against a primary insurer.

## II

We now turn to the specific defects that the district court found to be fatal to the plaintiffs' case. This appeal comes to us on a dismissal of the plaintiffs' Second Amended Complaint. A brief review of the first two iterations of the complaint sheds some light on what went wrong and why plaintiffs are entitled to no further amendments.

From the outset of this litigation, the question of standing has been hotly disputed. Plaintiffs acknowledge that they and similar organizations have filed a number of suits in which the initial complaints "did not name any exemplar beneficiaries or their corresponding assignor [Medicare Advantage] Plans." Instead, they "generally alleged the assignments held by plaintiffs from multiple [Medicare Advantage Organizations], and alleged plaintiffs' analysis of

the data from multiple unreimbursed claims." This led to successful defense motions to dismiss for lack of standing: as the plaintiffs put it, "[g]enerally, the district court rulings on these early motions were to dismiss the complaints, with leave to amend, directing some degree of greater specificity." When State Farm in this case moved to dismiss the initial complaint for lack of Article III standing (among other grounds), the plaintiffs responded by filing an amended complaint to put more meat on the bone.

The First Amended Complaint fell short, however. It identified an exemplar beneficiary by initials and a Medicare Advantage Organization (whose identity was redacted) that allegedly had made secondary payments, but it provided little additional information about the underlying claims or payments. Even after the district court issued a protective order, plaintiffs still failed to disclose the name of the assignor Medicare Advantage Organization to State Farm. This time, in response to State Farm's motion, the district court dismissed the complaint for lack of Article III standing. It found that the plaintiffs could not demonstrate an "injury in fact" for purposes of Article III standing without more specificity as to the injuries sustained by the exemplar beneficiary and the assignor Medicare Advantage Organization that had allegedly paid the unreimbursed medical costs. The court gave the plaintiffs another chance to cure that defect by granting leave to amend.

Plaintiffs took advantage of that opportunity and filed a Second Amended Complaint. In this iteration, the plaintiffs chose a new "exemplar beneficiary" (identified by the initials "R.Y.") and named the Medicare Advantage Organization that had made the secondary payments as Health First

Administrative Plans ("HFAP"). A chain of assignments transferred HFAP's alleged right of recovery to Recovery Claims. The complaint alleged that R.Y. suffered specific injuries in an accident; that HFAP was the entity that paid medical costs for R.Y.; that State Farm entered into a settlement agreement with R.Y.; and that State Farm failed to reimburse HFAP for the costs HFAP had incurred.

This time, however, there was a new problem: it was not clear that HFAP qualified as a Medicare Advantage Organization. After the defendants filed another motion to dismiss for lack of standing, but before the district court had arrived at a decision, a district court in Florida ruled in a related case that HFAP was not a Medicare Advantage Organization at all. *MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, No. 17-23841, 2018 WL 1953861 *5 (S.D. Fla. Apr. 25, 2018) ("*Auto-Owners*"). The Florida court took judicial notice of the fact that HFAP does not appear on the list maintained by the Centers for Medicare & Medicaid Services of Medicare Advantage Organizations. *Id.* Instead, HFAP is an entity that had *contracted* with a Medicare Advantage Organization—a closely linked entity by the name of Health First Health Plans—to provide a range of administrative, financial, and strategic-planning services. The two entities (Health First *Administrative* Plans and Health First *Health* Plans) shared very similar names, a holding company, and a Chief Operating Officer, Michael Keeler. But crucially, in the Florida court's view, only Health First Health contracted directly with the government and qualified as a Medicare Advantage Organization for purposes of the private right of action that the plaintiffs were asserting. Accordingly, the Florida court found that HFAP did not have any recovery rights to assign, even assuming plaintiffs were correct about

the private right of action: any such claims belonged only to Health First Health.

Only one of the plaintiffs in this case—Recovery Claims—was a party to *Auto-Owners*. Nonetheless, the overlap was enough to matter. As in this case, the plaintiffs in *Auto-Owners* argued that whatever the proper characterization of HFAP might have been, its service contract with Health First Health meant that it could pursue Health First Health's legal claims or assign them away. The Florida court rejected that contention, ruling that "a contract for services is not an assignment of rights," and thus "HFAP [could] not assign rights to Plaintiff that were not assigned to it in the first place." *Id*. This left the Florida plaintiffs without any rights to enforce. Similarly, in this litigation, the district court thought, the only purported assignment that could confer standing on any of the plaintiffs was one from HFAP to Recovery Claims.

State Farm brought *Auto-Owners* to the attention of the district court the day after it was issued. The next day, the district court entered a Text Order directing the plaintiffs to explain why this litigation should not be dismissed on the same grounds.

The plaintiffs complied with that order. Their response first argued that *Auto-Owners* was wrongly decided for two reasons: (1) HFAP does qualify as a Medicare Advantage Organization for purposes of the private right of action; and (2) the agreement between Health First Health and HFAP granted HFAP the power to enforce Health First Health's legal rights as its agent, making the agreement the equivalent of an assignment. In a decision issued on May 25, 2018, the district court rejected both points.

The court was particularly bothered by what it saw as a bombshell: the revelation in the plaintiffs' response that Health First Health, which had never been mentioned in the Central Illinois case, not HFAP, was the entity that paid the unreimbursed medical costs. This fact contradicted earlier filings that identified HFAP as the payer with reimbursement rights. If that was true, the district court thought, then HFAP (whatever its status) never incurred any injury and so had no rights that it could assign. The court also reasoned that in light of this development, there was no need to decide, as the Florida court had, whether HFAP was a qualifying Medicare Advantage Organization. It was *Health First Health* that paid the unreimbursed bills, but the plaintiffs had an assignment only from *HFAP*. Only if Health First Health's service contract with HFAP also assigned HFAP its legal rights could the case have a leg to stand on. And on this point, the district court agreed fully with its Florida counterpart: it emphasized, contrary to the plaintiffs' arguments, that a document creating an agency relationship and one effecting an assignment of rights are two entirely different things. Accordingly, the district court dismissed the case on this ground alone. "Assuming HFAP is [a Medicare Advantage Organization], Plaintiffs still need to satisfy Article-III standing requirements, and this they cannot do."

Up to this point, we agree with the district court's disposition of the case. Nothing in the agreement between Health First Health and HFAP suggests that Health First Health was assigning away any of its rights. Without such an assignment, HFAP's own assignment to plaintiff Recovery Claims conveyed nothing, and thus the plaintiffs had no rights to enforce and no standing to sue. As we note when we reach the sanctions portion of this appeal, additional

information later came to the district court's attention, but that new information could not have affected the court's order of May 25.

We part ways with the district court only with respect to the bottom line. The decision that plaintiffs lacked Article III standing is one of jurisdictional significance: it means that the court had no authority to resolve the case. See, *e.g., Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016). And that is why the court erred by dismissing the case "with prejudice." See, *e.g., T.W. and M.W. v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997) ("[W]hen a suit is dismissed for want of subject-matter jurisdiction, that is, because the court has no power to resolve the case on the merits even if the parties are content to have it do so, it is error to make the dismissal with prejudice").

If a complaint fails to include enough allegations to support Article III standing for the plaintiffs, the court has only two options: it can either dismiss the complaint with leave to amend, or it can dismiss the case for want of jurisdiction and hence without prejudice. The Federal Rules of Civil Procedure allow for one amendment as of right and direct district courts "freely [to] give leave [for further amendments] when justice so requires." FED. R. CIV. P. 15(a). But after the first round of amendments, the court has the discretion to deny leave to amend. If, after amendments, the jurisdictional problem persists, then the only option left is a dismissal without prejudice.

A dismissal for lack of jurisdiction without leave to amend is not the same thing as a dismissal with prejudice. A dismissal with prejudice is a ruling on the merits, because it carries with it a preclusive effect that prevents the plaintiffs from relitigating—in any court, ever again—any claim

encompassed by the suit. We have emphasized this distinction before. See, *e.g., Murray v. Conseco, Inc.*, 467 F.3d 602, 605 (7th Cir. 2006) ("'No jurisdiction' and 'with prejudice' are mutually exclusive.' A court that lacks subject matter jurisdiction cannot dismiss a case with prejudice."); *Okoro v. Bohman*, 164 F.3d 1059, 1063 (7th Cir. 1999) ("[A] judgment on the merits precludes relitigation of any ground within the compass of the suit, while a jurisdictional dismissal precludes only the relitigation of the ground of that dismissal.").

If plaintiffs believe they have satisfied the standing requirements of a proper state-court forum—requirements that may differ from those used by the federal courts—they may try their luck in state court. Or, if they later believe they can demonstrate that they have suffered an injury in fact after all, perhaps on the basis of a *different* assignment or exemplar claim, they can present these claims against the same defendant in a new federal suit (assuming of course that no independent barrier, such as the statute of limitations, exists). Indeed, in a case brought by these plaintiffs against the same defendant and before the same district judge—which the court called "a putative class action with slightly different facts, but consisting of virtually identical allegations under the law"—these plaintiffs *did* successfully demonstrate standing and survived a motion to dismiss. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.* ("*State Farm I*"), No. 17-cv-01537, 2018 WL 3420796 at *1, *7 (C.D. Ill. July 13, 2018).

None of these later developments, however, means that the district court was required to let this lawsuit continue. The court did not abuse its discretion by saying "enough is enough." It observed that "Plaintiffs have been given a few

chances to demonstrate this Court has jurisdiction." This suit, the judge thought, had run its course. Indeed, in a footnote explaining its dismissal "with prejudice," the court cited *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) for the unassailable proposition that district courts "have broad discretion to *deny leave to amend* where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." (Emphasis added). The only problem was thus the court's use of the phrase "with prejudice" to signal that it would permit no more amendments.

On this understanding of the district court's order, we find no abuse of discretion in its decision to dismiss on standing grounds and to refuse further amendments. While it is true that the plaintiffs had not previously had a chance to address the HFAP/Health First Health mix-up, they were on notice from the outset that the issue of standing would be front and center. If they were going to hang their hat on a single "exemplar" after two unsuccessful attempts, it was important to get it right on the third try. The district court's frustration at their failure to do so was understandable. And the court was entitled to give little weight to their plea for another round of pleading, since their memorandum included nothing beyond a request for "leave to allege additional exemplar beneficiaries," without naming them or providing any reason for the district court to believe that the fourth time would be the charm. Denying leave to amend under such circumstances was well within the district court's discretion. See *James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 400– 01 (7th Cir. 2006) (finding that lack of specificity in proposed amendments justified denial of leave to amend).

### III

In the same order that dismissed the Second Amended Complaint, the district court also ordered the plaintiffs to show cause why they should not be sanctioned for their earlier filings, which wrongly identified HFAP as the payer of the relevant medical costs. We address the substance of the sanctions issue below. Here we note that the plaintiffs' *response* to the order to show cause contained materials relevant to standing and the merits, including (1) a declaration attesting to many additional exemplars that could be alleged; (2) a purported "nunc pro tunc" or retroactive assignment from Health First Health to one of the plaintiffs, intended to cure the defect identified by the court; and (3) a declaration from Michael Keeler, the Chief Operating Officer of Health First Health and HFAP, explaining the relationship between the two entities and putting on the record that he had always intended to assign rights from Health First Health to the plaintiffs. On appeal, the plaintiffs argue that in light of this new evidence, the district court abused its discretion when it refused further amendments.

We need not decide whether any of these documents might have been enough to call into question the district court's dismissal without leave to amend, because the court did not have any of this evidence in front of it when it issued the dismissal order. The time to provide this information was in response to the defendants' motion to dismiss or in the supplemental response to the district court's Text Order regarding *Auto-Owners*. A post-dismissal filing in response to an order to show cause was too little, too late. And to make matters worse, the plaintiffs never filed a motion for reconsideration or relief from judgment. None of the

information provided to the district court after the dismissal required it to revive the suit.

Because we agree that the district court was without jurisdiction to address the merits of the case, that means we are, too. Accordingly, we also dismiss State Farm's cross-appeal arguing for a dismissal on the merits.

## IV

Finally, we must decide whether Rule 11 sanctions against plaintiff Recovery Claims and three of its attorneys were proper. We review the district court's decision to impose sanctions for abuse of discretion. *Cooter & Gell v. Hartmax Corporation*, 496 U.S. 384, 405 (1990). When we apply that standard, however, we must bear in mind that "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* See also *Equal Employment Opportunity Comm'n v. CVS Pharmacy, Inc.*, 907 F.3d 968, 973 (7th Cir. 2018) (explaining the Rule 11 abuse-of-discretion standard as clarified in *Cooter & Gell*).

## A

Rule 11 requires that attorneys certify "to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that their filings have adequate foundation in fact and law and lack an "improper purpose." FED. R. CIV. P. 11. Because the district court appeared to base its sanctions order on counsel's lack of candor—*i.e.* filing documents with the court in bad faith — *and* a failure to undertake an objectively reasonable inquiry, we address both grounds. See *Mars Steel Corp. v. Cont'l Bank*

*N.A.*, 880 F.2d 928, 930 (7th Cir. 1989) (recognizing that Rule 11 embodies both an objective and a subjective standard, prohibiting both "frivolousness on the objective side" and "bad faith on the subjective side.")

At this stage of the case, the district court had the benefit of the plaintiffs' response to the order to show cause, in which they filed the additional materials mentioned above. Those submissions are relevant to the Rule 11 analysis.

We begin with the finding of bad faith or "lack of candor." We are hard-pressed to see any indication of intentional misrepresentation in this confused and confusing record. None of the counsel for Recovery Claims—the only party that was sanctioned—entered an appearance in the Florida *Auto-Owners* litigation. As far as the record shows, the first time *these* attorneys learned of the *Auto-Owners* decision was when State Farm brought the case to the attention of the district court here. We also agree with the plaintiffs that, contrary to the district court's finding, there is no basis in the record for the conclusion that these attorneys knew anything about the HFAP/Health First Health distinction until they saw the Text Order. (The district court seemed to derive its conclusion from what it understood to be the plaintiffs' "admis[sion] that [they] knew there were multiple 'Health First' entities and that HFAP did not actually pay R.Y.'s medical expenses … ." But the cited portion of plaintiffs' response to the Text Order does not support that conclusion, and plaintiffs disclaim ever having made such an admission.) Without knowledge of the HFAP/Health First Health distinction, most of the supposed misrepresentations in the earlier filings regarding HFAP's status as a Medicare Advantage Organization or as the payer of R.Y.'s medical bills look more like honest mistakes. The

same goes for any misunderstanding about the nature of the assignment.

The district court also appears to have found that counsel's submissions *after* the Text Order was issued demonstrated a lack of candor inasmuch as they did not immediately admit (1) the inaccuracies in their earlier pleadings and (2) that fatal nature of the mix-up uncovered in *Auto-Owners*. This also goes too far. In light of the evidence the plaintiffs submitted to the district court on the Rule 11 point, it is understandable why they had maintained that there was a colorable reading of the underlying assignment that would give effect to Keeler's unquestioned intent, *i.e.*, to assign Health First Health's rights to plaintiff Recovery Claims. And as the district court eventually acknowledged in its order imposing sanctions, there was "*some* debate" on the question whether HFAP might qualify as a Medicare Advantage Organization (an issue that ultimately proved immaterial but that was relevant to the claimed accuracy of the earlier filings). True, the plaintiffs may have understated the scope of the problem in their response to the Text Order, and they may have erred by pursuing a legal argument that stretched agency theory too far. They also should have brought their supporting materials before the district judge at the same time as they filed their response to the Text Order. But in the absence of either affirmative representations or material omissions in the response to the Text Order, what we are left with is an aggressive litigation strategy with a colorable (if strained) basis in law and fact, rather than a lack of candor. That is not sanctionable conduct.

The district court also had other grounds for imposing sanctions: carelessness and inattentiveness. As we have

emphasized repeatedly, an 'empty head but a pure heart is no defense.'" *U.S. Bank Nat. Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465, 470 (7th Cir. 2005) (quoting *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1006 (7th Cir. 1994)). Because Rule 11 imposes on attorneys a duty to conduct an "inquiry reasonable under the circumstances" before they attest to "knowledge, information, and belief" supporting their filings, even honest mistakes can be sanctionable. The district court found that the attorneys in this case failed to live up to that duty.

It is one thing to lose on a point, however, and another to urge something so ill-founded that it is sanctionable. Although the standard for abuse of discretion is demanding, we conclude that the district court stepped over the boundaries of its discretion in imposing sanctions on the basis of carelessness or inattention. Again, the exhibits the plaintiffs filed in response to the order to show cause are instructive. The affidavit from Keeler demonstrates that Health First Administrative Plans (HFAP) and Health First Health Plans shared more than very similar names, a holding company, and a common COO; they were, for many purposes, almost indistinguishable to any external party dealing with them. As Keeler averred, "[Health First Health] acts through myself and its other corporate officers, but it has no employees … [Health First Health] takes no action except through HFAP's agents and employees." Affidavit of Michael Keeler, June 1, 2018 at 1–2. To make matters more confusing, at least according to plaintiffs' allegations, *HFAP* did business under the name "Health First Health Plans."  And even if Health First Health was the entity from whose assets the beneficiary was paid—meaning it possessed the reimbursement rights— plaintiffs point out that "the *act* of payment would not

unreasonably or inaccurately be attributed to HFAP, which carried out all acts on behalf of [Health First Health]."

Without getting further into the weeds, it suffices to say that this corporate arrangement was not just complex, but so freighted with overlapping names and functions that a mix-up was, at the end of the day, understandable. The district court did "not accept that Health First's 'corporate structure' was too confusing to warrant the misstatements in the Second Amended Complaint." Respectfully, the district court reached its conclusion about the straightforward nature of the corporate arrangement while it was looking at it with the benefit of hindsight. The court did not give adequate weight to the plaintiffs' additional evidence, nor did it consider carefully enough what the attorneys knew and when they knew it. (How could the details of this structure have been apparent at a time when the attorneys were unaware that there *was* a second "Health First" entity?) Sanctions against the attorneys for Recovery Claims were not warranted on this record.

B

The sanctions against plaintiff Recovery Claims must also be reversed. As discussed, we find that none of the actions or omissions of its counsel in this case amounted to sanctionable conduct. The district court did not point to any conduct by Recovery Claims itself, rather than its agents, that would independently allow us to sustain the imposition of sanctions. Unlike its counsel, Recovery Claims did have some knowledge of the Florida litigation. But we detect nothing improper in the two-day lapse between the *Auto-Owners* decision on April 25, 2018, and the district court's Text Order on April 27, especially given the factual and legal arguments

that plaintiffs might have wished to develop in response. It is true that there was a 14-day hiatus between Keeler's affidavit in the *Auto-Owners* case, which explained the HFAP/Health First Health ownership structure, and the day the district court learned of the ruling that the Florida district judge made as a result. Nonetheless, we conclude that it is too much of a stretch to sanction plaintiff Recovery Claims for failing to recognize the implications of an affidavit filed in one case, without the benefit of any dispositive ruling on the issue, for a completely different case being litigated by a separate team of attorneys. As far as we can tell, the sanctions against Recovery Claims must rise or fall with the sanctions against its attorneys. And so they fall.

Plaintiffs and their counsel have been punished for their missteps: the case was dismissed without leave to amend, and we affirm that dismissal today. But sanctions are a step too far.

## IV

We AFFIRM the district court's dismissal without leave to amend, but we modify it to be a dismissal without prejudice. We REVERSE the entry of sanctions against MSP Recovery Claims, Series LLC, and its counsel in this case. State Farm's cross-appeal is DISMISSED. Each party will bear its own costs on appeal.