In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 20-1268

MAO-MSO RECOVERY II, LLC; MSP RECOVERY, LLC; MSPA CLAIMS 1, LLC; and MSP RECOVERY CLAIMS SERIES LLC,

*Plaintiffs-Appellants,*

*v.*

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Company,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:17-cv-01537 — **Joe Billy McDade**, *Judge.*

———————————

ARGUED NOVEMBER 5, 2020 — DECIDED APRIL 20, 2021

———————————

Before SYKES, *Chief Judge*, and HAMILTON and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. For the second time in as many years we affirm the district court's dismissal of a lawsuit brought under the Medicare Act by entities seeking to collect on healthcare receivables assigned to them by so-called Medicare Advantage Organizations. The Medicare Act may

authorize the lawsuit but, regardless, the district court rightly recognized that identifying a federal cause of action satisfies only half of the inquiry necessary to establish subject matter jurisdiction. The half left unsatisfied is Article III standing—the same shortcoming that resulted in the dismissal of the analogous lawsuit two years ago. Despite ample opportunity, the plaintiffs once again were unable to show any injury in fact. They failed to find within their basket of assigned receivables an example of a concrete and definite amount owed them by the defendant, State Farm Mutual Automobile Insurance Company. In affirming, we sound a word of caution. This lawsuit mirrors scores like it filed in federal courts throughout the country that have all the earmarks of abusive litigation and indeed have drawn intense criticism from many a federal judge. The plaintiffs should think hard before risking a third strike within our Circuit.

## I

### A

The Medicare Act is as unwieldy and complex as any statute in the U.S. Code. This appeal, fortunately, does not immerse us in the interpretive morasses that often define Medicare appeals. What is important here is understanding some basic points about the flow of Medicare payment obligations and the distinction between primary and secondary payers under the program.

Congress divided the Medicare Act into so-called parts. Part C of the Act allows private entities to provide insurance coverage for some Medicare enrollees. See 42 U.S.C. § 1395w-21(a). These private entities are known as Medicare Advantage Organizations or MAOs. See *id.* Just like the

Medicare program itself, these MAOs act as secondary payers in situations where another insurer—for example, a worker's compensation plan or automobile insurer—is also responsible for paying for medical care. See *id.* §§ 1395y(b)(2)(A)(ii); 1395w-22(a)(4). These other insurers are known as primary payers.

A simple example illustrates this point. Suppose a driver is injured in a car accident. Assume the driver has a car insurance policy with a $10,000 limit for medical bills associated with an accident and, separately, has coverage from an MAO through Medicare Part C. In an ideal world, the driver's car insurance would cover the first $10,000 in medical expenses with the MAO picking up the rest.

The real world, of course, is not always ideal, and primary payers do not always pay (or timely pay) covered medical expenses. The Medicare Act recognizes this reality and allows an MAO (as a secondary payer) to make "conditional payments" if the primary payer "has not made or cannot reasonably be expected to make payment with respect to such item or service promptly." *Id.* § 1395y(b)(2)(B). If an MAO makes such a conditional payment, the Act in turn creates a private right of action allowing the MAO to seek reimbursement from the primary payer who should have made payment in the first place. See *id.* § 1395y(b)(3)(A). Importantly, this private right of action allows an MAO to recover double damages for any unreimbursed conditional payment. See *id.*

B

Because of the ubiquity of insurance in the modern economy, people often have overlapping coverage through both a primary payer and an MAO. As a result, MAOs sometimes

make conditional payments with insufficient knowledge about the responsible primary payer. If an MAO later learns that a primary payer shouldered principal responsibility for a particular covered expense, the organization is able to seek reimbursement from the primary payer. But trying to collect these unreimbursed payments can be tedious, costly, and uncertain. This creates an incentive for MAOs to outsource this process—essentially to assign or sell its right to reimbursement to another party.

On the demand side, entities like the plaintiffs here see financial opportunity in effectively becoming debt collectors for MAOs. This arrangement can be lucrative because of the Medicare Act's double damages provision. If debt collectors—or more accurately assignees of the MAO—can identify unreimbursed conditional payments and successfully bring suit under the Act, they can collect twice as much on a particular assigned receivable. But again, because it is not always clear which assigned receivables in fact reflect conditional payments, taking on this debt collection role brings with it financial uncertainty. And, just like the MAOs, a third-party assignee may not know at the time of the initial assignment which or how many conditional payments should actually be reimbursed by a primary payer.

Note the financial realities that exist for the debt collectors and MAOs alike. Both have financial incentives to expend as little as possible on the front end of these assignment arrangements. This is so because it is often unclear at the time of the initial assignment what, if any, value exists in the assigned receivables.

We see this reality play out in the assignment contracts in the record before us in the following way: MAOs agree to

assign their collection rights to large baskets of potential conditional payments in exchange for a percentage of anything recovered. For their part, the debt collectors agree to this fee sharing arrangement but do not pay much, if anything, up front for the assignation of collection rights. It is then on the assignee—effectively the debt collector—to do its best to collect and thereby realize value on the assignment. If the assignee is successful in recovering double damages through litigation, there is sufficient revenue to make the litigation and collection effort worth the collector's while, with proceeds remaining to share with the MAO. If nothing is recovered, the assignee loses only its litigation costs.

C

With this basic backdrop in place, we turn to the litigation at hand. The plaintiff debt collectors in this case (whom we refer to collectively as "MAO-MSO") are various entities who have entered into assignment contracts with MAOs and acquired rights to collect conditional payments. Because of the nature of the market we just described, these assignee debt collectors had little incentive to perform any diligence on the front end of these transactions to verify the value of what they may have received in the assignment. And indeed MAO-MSO do not appear to have done so with any of the assignments at issue.

The lack of front-end diligence had a consequence: MAO-MSO found themselves unable in the district court to do more than show an assigned right to recover *potentially* unreimbursed payments. Put another way, they could identify baskets of possible receivables arising from payments MAOs made for healthcare provided to someone enrolled in Medicare but could go no further. They instead sought to use the

litigation process itself (in particular, discovery) as their pathway to identifying any value in the assigned receivables and then pursuing any available collections.

The district court demanded more. In order to show an actual injury—a necessary element of Article III standing—the district court required the MAO-MSO plaintiffs to identify something of value from within the basket of unidentified assignments. Even more specifically, MAO-MSO needed to point to an "illustrative beneficiary"—that is, to a concrete example of a conditional payment that State Farm, the relevant primary payer here, failed to reimburse to the pertinent MAO.

The plaintiffs responded by filing an amended complaint and alleging examples of particular unreimbursed conditional payments. On their third try they named a specific illustrative beneficiary identified by the initials "O.D." MAO-MSO outlined the injuries O.D. allegedly suffered in a car accident and contended that she "incurred accident-related expenses that were to be paid by [State Farm]" pursuant to an auto insurance policy, but for which State Farm "failed to adequately pay or reimburse" the appropriate MAO.

The district court determined that these allegations sufficed for pleading purposes to establish standing, so the litigation moved forward. Everything changed at summary judgment, however.

As the limited discovery process authorized by a magistrate judge progressed, MAO-MSO struggled to identify evidence supporting the allegations of financial injury in their complaint. The ensuing dispute centered on whether O.D.'s MAO made payments related to medical care stemming from a car accident *before* State Farm reached its limit under O.D.'s

auto policy. If so, then State Farm, as the primary payer, should have reimbursed the MAO, and its failure to do so would create an actionable injury. The specific payment in question was to a physical therapist. MAO-MSO's complaint alleged this payment was for treatment stemming from O.D.'s car accident, and therefore should have been paid by State Farm under O.D.'s auto policy. State Farm disagreed, explaining that the physical therapy services had no connection to O.D.'s car accident and instead related only to her efforts to recover from her prior knee surgery.

The district court framed the inquiry in terms of Article III standing: if the medical evidence allowed a finding that the physical therapy payment in question related to O.D.'s car accident—instead of the knee surgery—then MAO-MSO would have made the showing necessary at summary judgment to establish standing. After taking a close look at the record, the district court determined that MAO-MSO had not met their burden because no reasonable jury could find that the payment in question related to O.D.'s car accident. The absence of a concrete injury meant that MAO-MSO lacked standing, so the district court entered summary judgment for State Farm.

The MAO-MSO entities now appeal. They challenge the entry of summary judgment for State Farm as well as the district court's denial of requests to stay the summary judgment ruling pending additional discovery and, separately, for permission to file a third amended complaint.

## II

We encountered a very similar appeal involving these same parties two years ago. See *MAO-MSO Recovery II, LLC v.*

*State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573 (7th Cir. 2019) ("*MAO-MSO I*"). In *MAO-MSO I*, these same plaintiffs sought damages related to allegedly unreimbursed payments that State Farm should have made pursuant to personal injury policies (instead of the no-fault auto policies at issue here). See 935 F.3d at 577. The district court dismissed *MAO-MSO I* for lack of standing, and we affirmed. There, as here, the district court required the plaintiffs to identify specific examples of unreimbursed payments—the so-called illustrative beneficiaries—to demonstrate the existence of an actual injury and thus the Article III standing necessary to establish subject matter jurisdiction. In affirming, we determined that the district court's analysis was spot-on: because the assignment covering the illustrative beneficiary presented in that case was invalid, the plaintiffs did not establish standing. *Id.* at 580–81.

The district court charted the same analytical course here, and we once again affirm.

## A

Whether MAO-MSO have standing turns on two questions. First, we must consider whether the district court correctly demanded a showing of at least one illustrative beneficiary. Second, if such a showing was necessary, we need to assess whether the plaintiffs supported their illustrative beneficiary allegations with enough evidence to show a concrete and particularized injury. The district court was right to find that MAO-MSO once again failed to meet this burden.

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547

(2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). The familiar test for Article III standing requires a plaintiff to show an injury. See *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). And the Supreme Court has made clear that the elements of standing are "not mere pleading requirements but rather an indispensable part of the plaintiff's case [which] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Because the cause of action here is a statutory claim for the collection of unreimbursed payments, MAO-MSO's injury has to be the existence of an unreimbursed payment—a concrete right to collect from State Farm—not the mere existence of an assignment to collect *potentially* unreimbursed payments. If, for example, State Farm adhered to its obligations under an auto policy by fully paying particular medical expenses, any assigned rights to reimbursement would have no value, and MAO-MSO would have suffered no injury. Right to it, the district court correctly required MAO-MSO to identify at least one illustrative beneficiary for whom State Farm had failed to reimburse an MAO for medical expenses it paid in the first instance.

MAO-MSO urge a different approach. For the first time on appeal MAO-MSO contend that they did not need to present an exemplar claim to establish standing at the summary judgment stage. Instead, they insist that standing requires no more than a showing of a valid assignment from an MAO to pursue reimbursement from a primary payer like State Farm. Not so in our view.

As an initial matter, MAO-MSO never made this argument in their summary judgment briefing in the district court, and so have waived it. See *Perry v. Sullivan*, 207 F.3d 379, 383 (7th Cir. 2000) ("Arguments raised for the first time on appeal are routinely deemed waived."). But even if we entertain the contention, MAO-MSO's position conflates whether the entities have a statutory private cause of action with the existence of an injury-in-fact. For purposes of establishing subject matter jurisdiction, the inquiries are distinct. Both Article III standing and a cause of action are necessary to establish a Case or Controversy over which we have jurisdiction. See *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."). But neither showing alone is sufficient.

That Congress created a cause of action and thereby authorized the enforcement of a particular right or pursuit of a certain remedy in federal court does not itself demonstrate the existence of a concrete and particularized injury. The Supreme Court underscored this precise point in *Spokeo*, explaining that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." 136 S. Ct. at 1549. Congress can provide a cause of action, as it did here in Part C of the Medicare Act (see 42 U.S.C. § 1395y(b)(3)(A)), and that cause of action may be available to certain plaintiffs (although whether third-party assignees can invoke this particular cause of action remains an open question). But even a plaintiff seeking a congressionally authorized remedy must still show a concrete and particularized injury.

The district court applied these well-established principles when it required MAO-MSO to support their allegations of a concrete, individualized injury through an illustrative beneficiary with evidence produced at summary judgment.

B

Answering whether O.D. was a proper illustrative beneficiary necessarily takes us into evidentiary details. And, in taking our own fresh look at the summary judgment record, we looked specifically at what the record shows about O.D.'s car accident and the surrounding medical treatment.

O.D. underwent knee replacement surgery in June 2013. After the surgery she required physical therapy, and her therapist recommended twelve sessions over four weeks beginning on October 3, 2013. About two weeks after O.D. began the physical therapy, she got into a car accident. The accident occurred on October 15, 2013, at a time when O.D. had already attended two of the twelve therapy sessions. At the scene of the accident, O.D. reportedly told the EMT that she had a headache and pain in her left knee. O.D. conveyed the same information to the ER nurse at the hospital.

The summary judgment record also contains notes from the doctor who treated O.D. at the hospital. Those notes make no mention of any knee injury or pain and only order tests related to O.D.'s cervical spine. Nowhere do the doctor's notes say a word about O.D. needing any kind of knee treatment.

The physical therapy that O.D. started before the car accident continued. The therapy treatment notes from the day after the car accident show that O.D. told her therapist that the accident did not affect her knee. Subsequent therapy notes

likewise say nothing about the accident and reflect no change in O.D.'s treatment after the accident. To the contrary, the physical therapist's notes continued to list O.D.'s knee surgery as the "mechanism of injury."

The district court relied on this evidence in determining that no genuine dispute of material fact existed as to whether the physical therapy treatment was for O.D.'s car accident instead of her knee surgery. The district court concluded that no reasonable juror could find that State Farm, as O.D.'s auto insurer, was responsible for paying a physical therapist to rehabilitate O.D.'s knee after reconstructive surgery, when the surgery occurred four months before the car accident and no reliable evidence indicated that the car accident exacerbated any knee injury.

MAO-MSO disagree, focusing on O.D.'s statements to the ER nurse that her knee hurt after the car accident. But MAO-MSO entirely overlook their own procedural error in the district court. Even though placing great weight on the ER nurse's notes, MAO-MSO failed to attach the notes to its summary judgment motion. We will not overlook the failing. Indeed, we have repeatedly held that it is not the responsibility of the district court to dig through the record to find evidentiary support for a party's summary judgment arguments. See *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) ("As the put up or shut up moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." (internal quotation marks and citation omitted)). The district court acted well within its

discretion by declining to consider a document that was not properly before it at summary judgment.

What is more, the fact that O.D. told an admitting nurse that she had knee pain is not evidence that her car accident caused that pain, let alone that subsequent physical therapy treatments were the result of or even related to the car accident. And that is especially so given the evidence, including the treating physician's notes, pointing in a different direction. Summary judgment requires only that all *reasonable* inferences be drawn in favor of the non-moving party. See *Poullard v. McDonald*, 829 F.3d 844, 852 (7th Cir. 2016). An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage, nor is a "conceivable" inference necessarily reasonable at summary judgment. See *Cont'l Casualty Co. v. Nw. Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

Based on the record properly before the district court, we agree that no genuine dispute of material fact existed regarding allegedly unreimbursed payments for O.D.'s medical treatment. Because O.D. was the only illustrative beneficiary properly before the district court at summary judgment, MAO-MSO failed to identify a specific receivable they had been assigned from an MAO that State Farm, as the primary payer under an applicable auto policy, was required to pay. MAO-MSO thus did not show the type of concrete and particularized injury necessary to demonstrate standing. On this record, the district court correctly granted State Farm's motion for summary judgment.

### III

We next consider two other rulings of the district court that MAO-MSO challenge on appeal. The district court denied MAO-MSO's requests for a stay of summary judgment pending further discovery under Federal Rule of Civil Procedure 56(d) and for leave to file a third amended complaint. We see no error in either of these rulings.

### A

We review the denial of a Rule 56(d) motion for abuse of discretion. See *Arnold v. Villarreal*, 853 F.3d 384, 389 (7th Cir. 2019). "Rule 56 permits a district court to delay consideration of a summary judgment motion and order additional discovery before ruling if the non-movant demonstrates that 'it cannot present facts essential to justify its opposition.'" *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627–28 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(d)). "The Rule places the burden on the non-movant that believes additional discovery is required to 'state the reasons why the party cannot adequately respond to the summary judgment motion without further discovery.'" *Id.* at 628 (quoting *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006)). Additionally, "[a] party seeking relief under Rule 56(d) must show by affidavit or declaration specific reasons discovery should be extended, which requires more than a fond hope that more fishing might net some good evidence." *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019).

The MAO-MSO entities did not meet their burdens. First, they once again waived part of their argument. MAO-MSO never objected to the magistrate judge's discovery order. They cannot now use their appeal of a Rule 56(d) motion to

challenge a scheduling order they never objected to in the first instance. See *Pinkston v. Madry*, 440 F.3d 879, 891 n.15 (7th Cir. 2006) ("[B]ecause [Plaintiff] failed to object to the magistrate judge's order prior to, during or after the hearing, the issue has been waived.").

Second, MAO-MSO failed to show why they needed additional discovery to oppose State Farm's summary judgment motion. More to it, in opposing the motion, MAO-MSO identified three additional illustrative beneficiaries they posited could have established standing. But MAO-MSO knew of these beneficiaries from the moment they signed the relevant assignment agreement—years before State Farm filed its summary judgment motion—and indeed had previously pleaded facts related to these individuals in other litigation. Plain and simple, MAO-MSO had ample time to conduct non-party discovery to develop the evidence related to these claims but took no steps to do so. Nor did MAO-MSO send any discovery requests to State Farm related to these specific beneficiaries. The plaintiffs now say that State Farm was not responsive to the general discovery requests they did send during class discovery, but they never filed any motions to compel State Farm to respond to a single request. On this record, now is not the time to complain about what transpired during discovery.

We see no abuse of discretion in the district court's denial of MAO-MSO's request to stay summary judgment under Rule 56(d).

B

Nor did the district court abuse its discretion in refusing to allow the MAO-MSO entities to file a third amended complaint. "We review a district court's denial of leave to amend

for abuse of discretion and reverse only if no reasonable person could agree with that decision." *Schor v. City of Chicago*, 576 F.3d 775, 780 (7th Cir. 2009). Additionally, because MAO-MSO filed their motion for leave well after the deadline to amend pleadings had passed, they must satisfy the "good cause" standard of Federal Rule of Civil Procedure 16(b)(4). ("A schedule may be modified only for good cause and with the judge's consent."). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

In an April 9, 2019 filing related to the enforcement of a protection order, MAO-MSO told the district court that they would "soon be moving to incorporate the [Florida] exemplar beneficiaries from [a recently dismissed] matter [in the Southern District of Florida] into the present one." They even discussed the Florida illustrative beneficiaries in their motion for class certification. From there, however, MAO-MSO failed to seek leave to amend their complaint until October 2, 2019—the day after they filed their response to State Farm's summary judgment motion. This six-month delay does not reflect the level of diligence necessary to establish good cause. And the district court did not abuse its discretion by so finding.

## IV

We end where we began. This appeal, much like our 2019 decision affirming the dismissal of a very similar lawsuit by the same parties, leaves us with the unmistakable impression that these debt collector plaintiffs pull the litigation trigger before doing their homework. They sue to collect on receivables they paid little or nothing for and then rely on the discovery

process to show they acquired something of value and thus have an enforceable right to collect. This time around, at the critical put up or shut up moment of summary judgment, the plaintiffs once again failed to establish standing.

Federal courts do not possess infinite patience, nor are the discovery tools of litigation meant to substitute for some modicum of pre-suit diligence. The plaintiffs' approach is not sitting well with many judges, and multiple district courts have already commented on what they perceive as MAO-MSO's rush to file litigation in the hope that discovery will show whether an actual case or controversy exists. See, *e.g.*, *MSP Recovery Claims, Series LLC v. AIG Property Casualty, Inc.*, 2021 WL 1164091, at *1 (S.D.N.Y. Mar. 26, 2021) (criticizing the complaint at issue as "long on invective and indignation but short on facts"); *MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*, 2019 WL 4222654, at *6 (N.D.N.Y. Sept. 5, 2019) ("Plaintiffs' tactics are a flagrant abuse of the legal system."); *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, 2018 WL 5112998, at *13 (S.D. Fla. Oct. 19, 2018) ("In light of the ever-shifting allegations Plaintiff has presented in its four versions of its pleading, it is evident Plaintiff has played fast and loose with facts, corporate entities, and adverse judicial rulings.").

Do not misread our opinion. Our message is directed to the plaintiffs and their counsel before us and, even more specifically, to the claims they continue to press in federal court. And our holding rests on a well-established principle of standing law—the lack of any injury in fact by virtue of the plaintiffs making no showing of a primary payer's failure to pay a particular obligation under the Medicare Act. Other areas of law (under consumer protection statutes perhaps most

especially) continue to present difficult and unsettled questions of Article III standing in the wake of *Spokeo*. We do not intend our warnings in this case to chill good-faith litigation on those broader issues of standing. But these plaintiffs' sue first and ask questions later approach risks stretching the limits of judicial patience, and counsel for the plaintiffs would be well advised to confirm the existence of an actual injury before once again availing themselves of the judicial process.

With these observations in mind, we AFFIRM.