# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-2374

CHICAGO TITLE LAND TRUST COMPANY, as Trustee,
HARMS ROAD ASSOCIATES, and MARK GOODMAN,

*Plaintiffs-Appellants*,

*v.*

POTASH CORPORATION OF SASKATCHEWAN SALES
LIMITED, PCS SALES (CANADA), INC., and POTASH
CORPORATION OF SASKATCHEWAN, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-cv-05344—**Elaine E. Bucklo**, *Judge.*

ARGUED NOVEMBER 30, 2011—DECIDED DECEMBER 27, 2011

Before MANION, WILLIAMS, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* After losing two suits in state court on claims related to a lease dispute, plaintiffs now try their luck in federal court. But, obviously, the move to federal court has not erased the prior state court

judgments. Because at least one of those prior judgments was on the merits, concerned the same parties, and the same cause of action, this action is barred by res judicata. The district court reached that conclusion based on *both* prior suits. We affirm, but our decision relies on only one of the state suits—the so-called "Individual Suit." Convinced that the adjudication of the Individual Suit compels us to affirm, we don't need to address whether the other state suit—the "Corporate Suit"—requires the same. Single or double res judicata, the effect is identical. Plaintiffs' action is barred.

In 1995, PCS Sales signed a 10-year lease with Chicago Title's predecessor-in-interest, American National, for space in a Skokie, Illinois office building. PCS Sales occupied approximately 15,000 square feet, or about 20% of the rentable space. In 1999, the corporate parent of PCS Sales, Potash Corporation of Saskatchewan, Inc., decided to consolidate various U.S. operations in one location and therefore needed much more space, up to an additional 60,000 square feet. As lease negotiations got underway, Potash Corp.'s CEO, William Doyle allegedly assured plaintiffs there would be a deal and that defendants should not rent to anybody else. Needless to say, negotiations failed. One of the problems was a disagreement about the meaning of the lease's early termination clause, Paragraph 30:

> If at the end of the fifth (5th) year of the lease Tenant shall require additional space of not less than 40% of Tenant's current leased spaced and Landlord is unable to provide such (contiguous

space accessed via stairwell to either the third floor or the fifth floor) within eight (8) months of notice from Tenant of expansion needs, then Tenant shall have the option to cancel this Lease upon at least ninety (90) days prior written notice to Landlord.

Defendants believe Paragraph 30 gave them a right to early termination only if they requested *at least* 40% more space and plaintiffs could not provide it. Plaintiffs understand Paragraph 30 as having set a *limit* of 40% on the additional space they were bound to provide.

In line with defendants' interpretation of Paragraph 30, in January 2000, PCS Sales sent written confirmation that it wanted at least 40% more space. That letter prompted Mark Goodman, the managing agent of Harms Road—plaintiff and beneficiary of the land trust held by Chicago Title—to tell Doyle that cancellation would kill the building. In response, Doyle allegedly told Goodman to ignore the letter and that PCS Sales would meet its obligations under the lease. PCS Sales began looking for a sublessor. In August 2000, PCS Sales general counsel, John Hampton, sent an internal memorandum stating that PCS Sales should consider invoking the cancellation clause. Soon after, PCS Sales vacated the building but continued paying rent and continued looking for a sublessor. In December 2000, PCS Sales sent written confirmation that no additional space had been offered and that it was exercising its option to cancel the lease under Paragraph 30, effective March 15, 2001.

In March 2001, plaintiffs filed their first state court suit, the Corporate Suit: American National sued PCS Sales and Potash Corp. for breach of lease, breach of guaranty and, after amendment, consequential damages and fraud. Amended complaints also added Harms Road as a plaintiff. Defendants won, but only after seven years and three rounds of summary judgment: In 2004, on consequential damages; in 2007, on fraud; and finally, in 2008, on standing. American National didn't have standing because it had already sold its trust business to LaSalle Bank by the time the suit was filed. Adding Harms Road as a co-plaintiff didn't solve the problem because Harms Road didn't have standing at the time of filing either. It had already defaulted on the mortgage for the Skokie building and that divested it of any right to rents. The Illinois Appellate Court affirmed based on standing.

In 2004, while the Corporate Suit was pending, American National and Harms Road filed the Individual Suit, alleging fraud against defendants' CEO (Doyle) and general counsel (Hampton). In September 2005, Doyle and Hampton's motion to dismiss for failure to state a claim was granted, but the complaint was dismissed *without* prejudice. The court gave the plaintiffs "28 days to re-plead, to and including October 21, 2005." But plaintiffs did nothing. At a status hearing two and a half years later, the suit was dismissed *with* prejudice. Plaintiffs moved to vacate the dismissal with prejudice and to have a new judge consider the ruling. They got a new judge but, reviewing de novo, he agreed with the first. The dismissal was affirmed on appeal.

In 2010, plaintiffs filed this diversity suit, again bringing claims for breach of lease, breach of guaranty, and fraud. The district court granted defendants' motion to dismiss based on res judicata, citing the judgments in the Corporate Suit and the Individual Suit. The district court also concluded that plaintiffs failed to state a claim for fraud. Plaintiffs' motion for reconsideration was denied and this appeal followed.

A dismissal on res judicata grounds is reviewed de novo. *Czarniecki v. City of Chicago*, 633 F.3d 545, 548 (7th Cir. 2011). Because the prior adjudication was in Illinois state court, we apply Illinois res judicata principles. *Rockford Mut. Ins. Co. v. Amerisure Ins. Co.*, 925 F.2d 193, 195 (7th Cir. 1991). For res judicata to apply, there must be (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) the same cause of action, and (3) the same parties or their "privies." *Hudson v. City of Chicago*, 889 N.E.2d 210, 215 (Ill. 2008). "If the three elements necessary to invoke res judicata are present, res judicata will bar not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit." *Id*. at 217 (quoting *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1205 (Ill. 1996)). "The purpose of res judicata is to promote judicial economy by requiring parties to litigate, in one case, all rights arising out of the same set of operative facts . . . ." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 896 (Ill. 1998) (internal quotation omitted).

Plaintiffs' appeal focuses on the district court's conclusion that the judgment in the Corporate Suit—based

ultimately on standing—was a judgment on the merits. Because under Illinois law standing must be raised as an affirmative defense and "do[es] not implicate . . . subject matter jurisdiction," *Lebron v. Gottlieb Mem'l Hosp.*, 930 N.E.2d 895, 916 (Ill. 2010), the district court had reason to reach that conclusion. But there is no need for us to consider that knotty question of Illinois law because, as the district court also concluded, plaintiffs' claim is equally barred by the judgment in the Individual Suit. We think that is correct, so we begin and end our analysis with the Individual Suit.

*Judgment on the Merits.* "Dismissal with prejudice for failure to state a claim is . . . tantamount to an adjudication on the merits." *Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 852 (Ill. 2001); *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001). And that was the result in the Individual Suit: In 2005, when the state trial court concluded that plaintiffs had failed to state a claim for fraud against Doyle and Hampton, the Individual Suit was dismissed without prejudice and plaintiffs were given four weeks to amend. As of 2008, plaintiffs had done nothing and the Individual Suit was dismissed with prejudice. The Illinois Court of Appeals affirmed, concluding that the trial court made no error because plaintiffs' "allegations are inadequate to plead fraud against the individual defendants."

*Same Cause of Action.* Illinois uses a transactional test to decide what counts as the same cause of action. According to that test, "separate claims will be considered

the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief. . . . [T]he transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *River Park*, 703 N.E.2d at 893. What factual grouping constitutes a transaction or a "series of connected transactions" is to be determined "pragmatically." *Id.* In the Individual Suit, plaintiffs alleged fraud against Doyle and Hampton for their representations about PCS Sales' intentions with regard to the lease. In this case, plaintiffs again allege fraud and support their claim by citing representations made by Doyle and Hampton. And all counts, including the claims for breach of lease and breach of guaranty, concern the same statements by Doyle and Hampton, Paragraph 30 of the lease, and whether defendants had the right to cancel because of an unsatisfied request for additional space. As with the first res judicata consideration, this is not a close call: Under Illinois' transactional test, the plaintiffs have only one cause of action.

*Same Parties or Privies*. "Privity is said to exist between parties who adequately represent the same legal interests." *People ex rel. Burris v. Progressive Land Developers*, 602 N.E.2d 820, 825 (Ill. 1992) (internal quotation omitted). "It is the identity of interest that controls in determining privity, not the nominal identity of the parties." *Id.* at 826. The privity analysis for the plaintiffs is straight-

forward: Harms Road was a plaintiff in the Individual Suit and is a plaintiff in this case. Defendants (wisely) do not dispute that Harms Road is in privity with its land trustee, Chicago Title, and its managing agent, Mark Goodman. On the defendants' side, Doyle and Hampton are corporate officers of PCS Sales. Under Illinois law, corporate officers are in privity with their employer for the purpose of res judicata "if the prior action concerned a matter within the agency." *Atherton v. Conn. Gen. Life Ins. Co.*, 955 N.E.2d 656, 660 (Ill. App. Ct. 2011). In the Individual Suit, plaintiffs alleged that Doyle and Hampton fraudulently misrepresented their employer's intentions. Whether representation or misrepresentation, managing PCS Sales' lease for office space and considering its legal rights and obligations under the lease were matters squarely "within the agency." The third res judicata requirement is therefore met.

As mentioned, "[i]f the three elements necessary to invoke res judicata are present, res judicata will bar not only every matter that was actually determined in the first suit, *but also every matter that might have been raised and determined in that suit*." *Hudson*, 889 N.E.2d at 215 (quoting *Rein*, 665 N.E.2d at 1205 (emphasis added)). Plaintiffs argue that res judicata should not be applied because they could not have sued Doyle and Hampton for breach—individual officers are generally not personally liable on corporate contracts. *Zahl v. Krupa*, 927 N.E.2d 262, 278 (Ill. App. Ct. 2010). Moreover, plaintiffs assert, the Individual Suit and Corporate Suit were "already consolidated" in 2005 and, therefore,

any attempt to add the corporate defendants to the Individual Suit would have failed under the rules of Illinois civil procedure.

First, we believe it is misleading for plaintiffs to assert that the Individual Suit and Corporate Suit were consolidated, as if the proceedings in one had bearing on the other. There's absolutely no evidence of that. The Individual Suit and the Corporate Suit were separately filed (years apart), separately decided, separately appealed, and separately affirmed. It is true that the Individual Suit was assigned to Judge Goldberg to "pend with a related case." And that related case was, of course, the Corporate Suit. But putting two cases involving the same facts on a single judge's docket is not to consolidate them, at least not in any way relevant to this appeal.

That said, it is true that with the Corporate Suit pending, it would have been odd for plaintiffs to add the corporate defendants to the Individual Suit to enable claims for breach. Such an amendment may have even been impossible without first dismissing the Corporate Suit. But that procedural difficulty is irrelevant to our res judicata analysis. *It was plaintiffs' burden to amend or dismiss their complaints as necessary to get their entire cause of action in one suit. See Doe v. Gleicher*, 911 N.E.2d 532, 540 (Ill. App. Ct. 2009). In short, plaintiffs' arguments based on procedural obstacles to their breach claims are completely unpersuasive because their "quandary here arises from their decision to split their lawsuit into separate actions." *Rein*, 665

N.E.2d at 1206. Claim splitting is not a way around res judicata. To the contrary, "[t]he principle that res judicata prohibits a party from later seeking relief on the basis of issues which might have been raised in the prior action also prevents a litigant from splitting a single cause of action into more than one proceeding." *Id.* Under Illinois' fact-based transactional test, the plaintiffs had one cause of action. They decided to split it and bring their individual and corporate claims separately. The result they now face—their entire cause of action is barred by res judicata based on the judgment in the Individual Suit—was a risk inherent in their litigation strategy.

No exceptions disturb this conclusion. "[R]es judicata will not be applied where it would be fundamentally unfair to do so." *Nowak*, 757 N.E.2d at 477. But, if anything, the equities are against these plaintiffs. In addition to promoting judicial economy, res judicata protects defendants from plaintiffs who split their claims into multiple actions. *Hudson*, 889 N.E.2d at 221. And that's just what these plaintiffs did—they split their cause of action—and they can't make an argument for "fundamental unfairness" without ignoring that basic fact. There are exceptions to the rule against claim splitting—if, for instance, the defendant allows the claims to be split or if claims in a successive suit could not have been made in a previous one because of a restriction on the court's subject matter jurisdiction—but none of the exceptions apply here and plaintiffs make no argument that they do. *See id.* at 216.

Finally, plaintiffs ask us to certify questions to the Illinois Supreme Court. Because their proposed questions relate to the Corporate Suit and do not control the outcome of this appeal, their motion is DENIED.

The judgment of the district court is AFFIRMED.