In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 20-2842

MICHAEL WHITE & ILLINOIS STATE RIFLE ASSOCIATION,

*Plaintiffs-Appellants*,

*v.*

ILLINOIS STATE POLICE, *et al.*,

*Defendants-Appellees*.

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19-cv-2797 — **Joan H. Lefkow**, *Judge*.

———————

ARGUED SEPTEMBER 15, 2021 — DECIDED OCTOBER 6, 2021

———————

Before BRENNAN, SCUDDER, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Illinois's Firearm Concealed Carry
Act creates a scheme for licensing individuals to carry con-
cealed firearms in public. Michael White applied for a con-
cealed carry license on two occasions. Both times the State de-
nied his application. White unsuccessfully appealed the first
denial in Illinois state court. Following the second denial,
White and the Illinois State Rifle Association (ISRA) filed this
lawsuit in federal court challenging the constitutionality of

the Concealed Carry Act. The defendants—state entities and officials tasked with enforcing the Act—moved to dismiss the lawsuit. The district court granted the motion with prejudice, and the plaintiffs now appeal.

We affirm. ISRA lacks Article III standing, so the district court correctly dismissed its claims. And White's facial challenges to the Concealed Carry Act are precluded by the judgment in his state court lawsuit challenging the denial of his first application. With these claims out of the way, our review on the merits is narrow. We ask only whether the Concealed Carry Act violates the Second Amendment as applied to the State's denial of White's second application. We hold that it does not. White has two criminal convictions—including one for unlawful use of a firearm—and multiple gun-related arrests. Illinois's individualized determination that White's criminal history renders him too dangerous to carry a concealed firearm in public survives intermediate scrutiny.

Though we affirm, we modify the judgment to reflect that ISRA's claims are dismissed without prejudice. The district court dismissed ISRA's claims for lack of jurisdiction, and a dismissal for lack of jurisdiction cannot be with prejudice.

## II. Background

### A. The Concealed Carry Act

Under the Concealed Carry Act, the Illinois Department of State Police "shall issue" a concealed carry license to an applicant who meets several statutory criteria. Namely, the applicant must be 21 or older, trained to handle firearms, eligible to possess a firearm under state and federal law, not subject to any pending proceedings that could disqualify him from possessing a firearm, and free of certain types of substance

abuse treatment and criminal convictions within the past five years. 430 ILCS §§ 66/10(a), 66/25. In addition, the applicant must "not pose a danger to himself, herself, or others, or a threat to public safety as determined by the Concealed Carry Licensing Review Board." *Id.* § 66/10(a)(4).

This last requirement takes center stage in this case. To determine whether an applicant poses a danger to himself or others or a threat to public safety, the Illinois Concealed Carry Licensing Review Board relies on objections from state law enforcement agencies. A state law enforcement agency "may" object to an application "based upon a reasonable suspicion" that the applicant poses a danger to himself or others or a threat to public safety. *Id.* § 66/15(a). An agency "shall" object to an application if the applicant has five or more arrests in the past seven years or three or more arrests in the same period "for any combination of gang-related offenses." *Id.* § 66/15(b). Objecting agencies must supply information relevant to their objections. *Id.* § 66/15.

If an agency objects to an application, the Board must resolve the objection by a preponderance of the evidence. *Id.* § 66/20(g). In doing so, the Board considers the materials submitted with the objection. *Id.* § 66/20(e). The Board may also request additional information or testimony from the agency, the state police, or the applicant. *Id.*; *see* 20 Ill. Admin. Code § 2900.140(c), 2900.150. Whenever an objection "appears sustainable," the Board notifies the applicant of the objection, including the basis for the objection, and allows the applicant to respond. 20 Ill. Admin. Code § 2900.140(e). If the Board sustains the objection, the state police must deny the application and "notify the applicant stating the grounds for the denial." *Id.* § 66/10(f). If there is no objection, or if the Board overrules

an objection, then the state police move forward with the application. *Id.* §§ 66/15(d), 66/20(g). Unsuccessful applicants may challenge the denial of their applications through administrative and judicial review. *Id.* § 66/87.

## B. White's First Application

White has a Firearm Owner's Identification Card, which allows him to possess a firearm at home, *see* 430 ILCS § 65/2(a)(1), but he has been unsuccessful in obtaining a concealed carry license. White first applied for a concealed carry license in May 2014. At the time, White was in his late 30s.

The Chicago Police Department and Cook County Sheriff objected to White's application on the grounds that the Chicago Police Department's gang database listed him as a member of the Latin Souls street gang. They also pointed to a 1995 arrest for battery with a knife, a 1996 arrest for unlawful possession of a firearm in a vehicle, and a 2012 arrest for unlawful use of a weapon and reckless discharge.

In response to the objection, White denied being a member of the Latin Souls street gang. With respect to the 1995 battery arrest, he claimed that he "never battered anyone and the arresting officer declined to press charges and that case was dismissed." He labeled the 1996 arrest "a case of mistaken identity," but he conceded that he pled guilty to unlawful use of a firearm (a misdemeanor) in 1998. And he maintained that the 2012 arrest had resulted in an acquittal at trial. Going beyond the information in the objection, White admitted that he pled guilty to misdemeanor possession of cannabis in 1994. He also admitted to an allegation of disorderly conduct in 2000 and a traffic offense in 2001.

The Board denied White's application in August 2015[1] after determining by a preponderance of the evidence that White posed a danger to himself or others or a threat to public safety. The Board did not explain the basis for its finding. White appealed the denial of his application, arguing that the Board's decision misapplied the statute and was wrong on the merits. More broadly, White argued that the Concealed Carry Act violated the Second Amendment and the Fourteenth Amendment's Due Process Clause. The Circuit Court of Cook County affirmed the Board's decision after holding a hearing.

White appealed, and the Illinois Appellate Court affirmed. *White v. Ill. Dep't of State Police-Firearms Serv. Bureau*, No. 1-16-1282, 2017 WL 2602637 (Ill. App. Ct. June 14, 2017). To begin, the court rejected White's statutory arguments, holding that the Act permits the Board to consider an applicant's entire criminal history, including old arrests and hearsay evidence of gang membership. In a similar vein, the court held that the Board did not violate state administrative law by failing to make findings of fact. On the merits, the court held that the Board's finding that White posed a "danger" or "threat" was not clearly erroneous. As for White's constitutional arguments, the court held that White had forfeited his Second Amendment claim by failing to raise it before the Board, that the Act's "danger" or "threat" standard was not unconstitutionally vague, and that the Board's failure to hold a hearing did not violate due process. The Illinois Supreme Court denied White's petition for leave to appeal.

---

[1] The Board initially denied the application in October 2014, but changes to the Illinois Administrative Code prompted the Circuit Court of Cook County to remand the case to the Board for reconsideration.

### C. White's Second Application

White's second application proceeded in similar fashion. He applied in August 2017, and the Chicago Police Department objected based on his 2012 arrest and his supposed membership in the Latin Souls street gang. In response, White again denied membership in any street gang. He made similar representations about his criminal history, though this time he admitted to a 1996 arrest for unlawful use of a weapon. He also reprised his constitutional arguments. In November 2017, the Board denied White's application based, once again, on its unexplained conclusion that he posed a danger to himself or others or a threat to public safety.

### D. Federal Lawsuit

Rather than appeal the denial of his second application in state court, White brought this federal lawsuit under 42 U.S.C. § 1983 against the state police, the Board, and various individuals associated with those organizations. White alleges that the Concealed Carry Act, both on its face and as applied to him, violates the Second Amendment and the Fourteenth Amendment's Due Process Clause. He seeks a declaration that the Act violates his constitutional rights as well as an injunction barring the defendants from violating his constitutional rights in the future and requiring them to issue him a concealed carry license.

White is joined in this lawsuit by ISRA. ISRA represents that its purposes include "securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation." It sues on its own behalf and on behalf of its members, many of whom have unsuccessfully applied for concealed carry licenses. It alleges that its

members would carry loaded firearms in public for self-defense, but that they refrain from doing so "because they fear prosecution due to the prohibition on carrying a concealed firearm in public for self-defense without a [license]." Those are all of ISRA's allegations. ISRA does not assert any claims or request any relief.

The district court granted the defendants' motion to dismiss with prejudice. The court dismissed ISRA's as-applied claims for lack of standing after finding that ISRA failed to identify any members who had been denied licenses. As to White, the court found that the doctrine of res judicata barred his facial claims because he had litigated (or could have litigated) those claims in his state court action. On the merits, the court ruled that both White and ISRA failed to state claims under the Second Amendment or the Fourteenth Amendment's Due Process Clause. The plaintiffs now appeal the dismissal of their claims.

## II. Discussion

Our analysis proceeds in three steps. First, we consider whether the district court properly dismissed ISRA's claims for lack of standing. Next, we consider whether res judicata bars White's claims, as the defendants maintain. And finally, because White's as-applied Second Amendment claim is not subject to res judicata, we address that claim on the merits.

### A. Standing

Article III limits the jurisdiction of federal courts to "Cases" or "Controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To have Article III standing, a plaintiff must show "(1) an injury in fact that is (2) caused by the defendant's conduct and (3) redressable by a favorable decision."

*Woodring v. Jackson Cnty.*, 986 F.3d 979, 984 (7th Cir. 2021) (citing *Lujan*, 504 U.S. at 560). Organizations like ISRA may have standing to sue either on their own behalf or on behalf of their members. *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 926 (7th Cir. 2013).

ISRA lacks either form of standing. ISRA lacks standing to sue on its own behalf because it does not allege an injury to itself or request any relief. *See id.* ("To bring suit in its own right, an organization must itself satisfy the requirements of standing."). ISRA lacks standing to sue on behalf of its members (known as "associational standing") because it does not identify any members, much less explain how those members would have standing to sue in their own right. *See United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996); *Disability Rts. Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008). The district court drew a distinction between ISRA's facial and as-applied claims, purporting to dismiss the facial claim on the merits and the as-applied claim for lack of standing. But ISRA failed to assert any claims for relief, and there is no way to dismiss a nonexistent claim on the merits, so we read the district court's order as dismissing both claims for lack of standing.

ISRA only halfheartedly disputes its lack of standing. Instead, it faults the district court for dismissing its claims with prejudice. In ISRA's view, the district court should have given it leave to amend the complaint to properly allege standing. The problem with this argument is that ISRA never asked for leave to amend in the district court. When a district court enters final judgment at the same time as it dismisses a complaint, the plaintiff should file a post-judgment motion for leave to amend under Federal Rule of Civil Procedure 59(e).

*See O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 629 (7th Cir. 2020) (noting that Federal Rule of Civil Procedure 15(a)(2)'s more generous standard for amending pleadings still applies to such motions). We have rejected the argument that Rule 15 requires a district court dismissing a plaintiff's original complaint with prejudice to *sua sponte* grant leave to amend the complaint. *James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 400–01 (7th Cir. 2006) (citing *Coates v. Ill. State Bd. of Ed.*, 559 F.2d 445, 451 (7th Cir. 1977)). Even after judgment is entered, a plaintiff seeking to amend a complaint must properly move to amend in the district court. *See, e.g., Hecker v. Deere & Co.*, 556 F.3d 575, 590–91 (7th Cir. 2009).

Nonetheless, we remind district courts that a plaintiff should ordinarily "be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015); *see also O'Brien*, 955 F.3d at 628–29. Dismissal without prejudice is the norm, at least when it comes to the plaintiff's original complaint. *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

We need not discuss these issues further because the point is moot. Despite the district court's "with prejudice" language, a dismissal on standing grounds can never be with prejudice. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019). When a court dismisses a case for lack of Article III standing, "it means that the court had no authority to resolve the case." *Id.* A dismissal with prejudice, by contrast, is a ruling on the merits that precludes "any claim encompassed by the suit." *Id.* These concepts are mutually exclusive: "A court that lacks subject matter jurisdiction cannot dismiss a case with prejudice." *Murray*

*v. Conseco, Inc.*, 467 F.3d 602, 605 (7th Cir. 2006). Thus, we treat the court's dismissal "with prejudice" as a dismissal for lack of jurisdiction without prejudice. *See MAO-MSO*, 935 F.3d at 583. As a practical matter, this means that ISRA may file a new lawsuit against the defendants if it wishes to properly allege standing and assert claims for relief.

## B. Res Judicata

We must next decide which, if any, of White's claims survive the judgment in his state court lawsuit. White concedes that res judicata precludes his facial challenges to the Concealed Carry Act. But he maintains that his as-applied challenges survive because they arise from a new and separate transaction—the 2017 denial of his second application. The defendants insist that res judicata bars White's claims across the board.

The Full Faith and Credit Clause provides that state "judicial proceedings" are entitled to "full faith and credit" in federal courts. 28 U.S.C. § 1738. This clause applies to state court judgments arising from judicial review of state administrative proceedings. *Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 634 (7th Cir. 2004) (citing *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481 (1982)). State law controls whether a state court judgment precludes a later federal lawsuit. *Id.*

Under Illinois law, res judicata requires "(1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) the same cause of action, and (3) the same parties or their 'privies.'" *Chi. Title Land Tr. Co. v. Potash Corp. of Saskatchewan Sales, Ltd.*, 664 F.3d 1075, 1079 (7th Cir. 2011) (quoting *Hudson v. City of Chi.*, 889 N.E.2d 210, 217 (Ill. 2008)). If these three elements are met, then "res judicata will bar not only

every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit." *Id.* (quoting *Hudson*, 889 N.E.2d at 217).

Only the second element of res judicata—same cause of action—is disputed here. Under Illinois's "transactional" test, "separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998); *accord Chi. Title Land Tr.*, 664 F.3d at 1079.

Applying the transactional test, we hold that res judicata does not preclude White's as-applied Second Amendment challenge. With respect to this claim, White's cause of action in this lawsuit is not the same as his cause of action in the state court lawsuit. The claims arise from different transactions. White's claim in state court challenged the denial of his first application for a concealed carry license. His claim here challenges a separate denial that happened more than two years later. Not only that, but the material facts are different. Most notably, more than two years passed between the first and second denials, and in those two years White had no run-ins with law enforcement. For purposes of his first application, White's most recent arrest (2012) was three years earlier. For purposes of his second application, White's most recent arrest was five years earlier. Those two additional years are significant given their implications for White's criminal history, which is relevant to his as-applied claim.

Illinois courts have held that the Board may consider an applicant's "entire criminal history," including arrests, in assessing whether the applicant poses a danger to himself or

others or a threat to public safety. *Perez v. Ill. Concealed Carry Licensing Rev. Bd.*, 63 N.E.3d 1046, 1052 (Ill. App. Ct. 2016). White had no arrests or other encounters with law enforcement between 2015 and 2017, so his criminal history looked different in 2017 than it did in 2015. This means that the State's interest in denying White a concealed carry application was at least somewhat different by 2017. And, as we will see, the State's interest is an important factor in an as-applied Second Amendment challenge.

The defendants minimize the significance of the two additional years, implying that they had a negligible impact on White's claim in this case. But that is not the test for res judicata under Illinois law. As explained, the claims arise from different transactions and there is at least one material factual difference between them. The defendants also argue, as a factual matter, that only two months passed between White's applications, given that the Illinois Appellate Court affirmed the denial of his first application in June 2017 and White reapplied two months later. What matters, though, is when the Board denied White's applications. That is the relevant state action in both lawsuits. And more than two years passed between the first and second denials.

Because White's as-applied Second Amendment claim in this case does not arise from the "same operative facts" as his earlier Second Amendment claim, res judicata does not bar that claim in this lawsuit. *Cf. Agolf, LLC v. Vill. of Arlington Heights*, 946 N.E.2d 1123, 1137 (Ill. App. Ct. 2011); *Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011).

We agree with the defendants, however, that res judicata precludes White's due process claim in its entirety. Although

White styles his due process claim as an as-applied challenge, he points to no material factual differences between the due process arguments he raises now and those he raised (or could have raised) in state court. In this case, White argues that the Concealed Carry Act violates due process because its "danger" or "threat" standard is unconstitutionally vague, it permits the Board to consider irrelevant and inflammatory information, it does not require the Board to hold hearings or make findings of fact, and it uses a preponderance-of-the-evidence standard. Nothing prevented White from raising identical arguments in his state court lawsuit. Indeed, he did raise most if not all of these arguments, and the Illinois Appellate Court rejected them on the merits. We note, moreover, that we squarely rejected a similar procedural due process claim in *Culp v. Raoul*, 921 F.3d 646, 658 (7th Cir. 2019).

In sum, the only claim that survives the state court judgment is White's as-applied Second Amendment challenge regarding the denial of his 2017 application. We limit our analysis of the merits to this claim. In doing so, we are mindful that White had the opportunity to raise a closely related claim in the state court suit, and that res judicata bars that claim. The two years intervening between the first and second denials are the only material difference between White's state court claim, which is barred, and the claim he raises now. We are also mindful that White has now bypassed the state court review process in favor of federal review. To be sure, § 1983 gives him that prerogative. *See Horsley v. Trame*, 808 F.3d 1126, 1129 (7th Cir. 2015). Even so, respect for the review mechanism that Illinois has established, along with broader concerns of comity and federalism, counsel against a searching federal review of the boundaries of the Concealed Carry Act's statutory criteria. *See Culp*, 921 F.3d at 658 (discussing the

interplay between the Second Amendment and "equally important principles of federalism" in the context of another constitutional challenge to the Concealed Carry Act). Illinois courts have been, and still are, actively fleshing out the statutory scheme and providing guidance for the Board. Our narrow role here is to ensure that the Board's 2017 denial of White's concealed carry application complied with the Second Amendment.

## C. Second Amendment

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment guarantees, at its core, "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. Applying this guarantee, the Court struck down a state law prohibiting handgun possession in the home, "where the need for defense of self, family, and property is most acute." *Id.* at 628–29. Two years later, the Court held that the Second Amendment is "fully applicable to the States." *McDonald v. City of Chi.*, 561 U.S. 742, 750 (2010). The Supreme Court has yet to address the scope of Second Amendment protection outside the home,[2] but we have held that the Second Amendment right to "bear"

---

[2] The Supreme Court recently granted certiorari in *New York State Rifle & Pistol Association v. Bruen*, No. 20-843, 2021 WL 1602643 (U.S. Apr. 26, 2021), to resolve whether New York's concealed carry licensing scheme violates the Second Amendment. We have determined, and the parties agree, that we can resolve White's narrow as-applied challenge without the benefit of the Supreme Court's opinion in *Bruen*. The Illinois and New York licensing schemes differ significantly.

arms for self-defense extends outside the home because the need for self-defense is not limited to the home. *Moore v. Madigan*, 702 F.3d 933, 941–42 (7th Cir. 2012).

Like other circuits, we apply a two-step approach to Second Amendment claims. First, we ask if the restricted activity falls within the scope of the Second Amendment. *Ezell v. City of Chicago*, 651 F.3d 684, 701 (7th Cir. 2011). If not, our review ends; "the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review." *Id.* at 702–03. If the Second Amendment applies, we proceed to means-end scrutiny, which "requires the court to evaluate the regulatory means the government has chosen and the public-benefits end it seeks to achieve." *Id.* at 703. Though some form of heightened scrutiny always applies, there is no fixed standard of review. *Id.* Instead, the precise standard of review "depend[s] on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." *Id.* As is our usual practice, we will assume without deciding that the Second Amendment applies to White and proceed directly to means-end scrutiny. *Kanter v. Barr*, 919 F.3d 437, 447 n.9 (7th Cir. 2019).

We have applied intermediate scrutiny numerous times to uphold laws that categorically bar certain groups of presumptively risky individuals from possessing firearms. *United States v. Meza-Rodriguez*, 798 F.3d 664, 673 (7th Cir. 2015) (undocumented immigrants); *United States v. Yancey*, 621 F.3d 681, 687 (7th Cir. 2010) (per curiam) (illegal drug users); *United States v. Williams*, 616 F.3d 685, 694 (7th Cir. 2010) (violent felons); *United States v. Skoien*, 614 F.3d 638, 645 (7th Cir. 2010) (en banc) (persons with misdemeanor domestic violence convictions); *see also Heller*, 554 U.S. at 626 ("[N]othing

in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."). In doing so, however, we have left room for as-applied challenges. *Kanter*, 919 F.3d at 451 (rejecting as-applied challenge to felon-dispossession statute where plaintiff was convicted of nonviolent but serious felony involving "conduct broadly understood to be criminal").

These cases guide our review of White's as-applied challenge and ultimately lead us to reject it. Compared to the categorical bans just discussed, the Concealed Carry Act has a similar aim but imposes a lesser burden. It, too, targets high-risk individuals, but it does not outright prohibit them from possessing firearms. Rather, it prohibits them from carrying concealed firearms in public, while leaving intact their right to possess firearms at home, where the need for self-defense "is most acute." *Heller*, 554 U.S. at 628. Given this more modest burden, White's as-applied challenge requires, at most, the same form of intermediate scrutiny that we applied in those earlier cases. *See Ezell*, 651 F.3d at 703.

Intermediate scrutiny asks whether a law is substantially related to an important government interest. *Kanter*, 919 F.3d at 451. White does not dispute that Illinois has an important interest in preventing dangerous people from carrying guns in public. *See, e.g.*, *Yancey*, 621 F.3d at 683–84 (describing the objective of "keep[ing] guns out of the hands of presumptively risky people" as "without doubt an important one"). Instead, he challenges the means that Illinois has chosen to pursue this interest. Specifically, White contends that the Concealed Carry Act permits the Board to indefinitely deny him his constitutional right to carry a concealed firearm based solely on teenage arrests and unproven allegations of gang

membership. White points to a 2019 review by the City of Chicago's Office of the Inspector General. The review criticized the Chicago Police Department's gang database for, among other things, including "incomplete and contradictory data." It also expressed concern that "those with inaccurate designations have no opportunity to clear their name and mitigate the impact of incorrect or outdated gang designations." Rather, "CPD's gang designations are permanent and inescapable."

White's as-applied challenge fails because it does not account for the rest of his criminal history. When the Board denied White's second application, it had more than teenage arrests and unproven gang affiliation in front of it. To be sure, two of White's arrests (for unlawful use of a firearm in 1996 and battery in 1995) were somewhat dated. But in his submissions to the Board, White admitted that he also had two criminal convictions—one of them for unlawful use of a firearm—and a 2012 arrest for unlawful use of a weapon and reckless discharge.

Sitting en banc in *Skoien*, we held that the government may categorically bar persons convicted of domestic violence misdemeanors from possessing firearms, at home or anywhere else. *Skoien*, 614 F.3d at 645. We reasoned, in relevant part, that prior convictions for violent crimes are strong predictors of future violence. *Id.* at 642. As such, barring persons with violent pasts from possessing deadly weapons was substantially related to the government's goal of "preventing armed mayhem." *Id.*; *see also Yancey*, 621 F.3d at 685 ("[H]abitual drug abusers, like the mentally ill, are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms."); *Kanter*, 919 F.3d at 449 (relying on

"studies that have found a connection between nonviolent offenders like Kanter and a risk of future violent crime").

Similar logic compels us to reject White's as-applied challenge. Through the Concealed Carry Act, Illinois seeks to prevent dangerous persons from carrying concealed firearms in public. White has two criminal convictions, including one for unlawful use of a weapon. He also has multiple gun-related arrests, the most recent from 2012. We are mindful that an arrest is not a conviction, and that White maintains he was acquitted of the 2012 charge at trial. But given the different standards of proof (reasonable doubt vs. preponderance of the evidence), the Second Amendment permits Illinois to consider White's gun-related arrests in assessing his dangerousness. In view of White's criminal history, Illinois reasonably determined that White would pose a danger to himself or others or a threat to public safety if allowed to carry a concealed firearm in public. From Illinois's perspective, a person who has violated criminal laws, including criminal gun laws, has a high risk of misusing firearms. And no one disputes that the misuse of firearms poses a significant threat to public safety.

The Board's individualized review process fortifies our conclusion that the Concealed Carry Act is constitutional as applied to White. We held in *Skoien* that "Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons." *Skoien*, 614 F.3d at 641. Here, though, Illinois has opted for just such a "highly-individualized approach," despite the "serious institutional and administrative" burdens that this approach entails. *Kanter*, 919 F.3d at 450. Rather than categorically bar White from carrying a concealed firearm based on his criminal history, Illinois has determined on an individualized basis that White

is too dangerous to carry a concealed firearm in public. As part of this individualized process, White had the opportunity to submit a response and tell his side of the story. He also had the opportunity (which he failed to take) of seeking administrative and judicial review of the Board's denial of his application. Despite White's arguments to the contrary, Illinois's individualized approach to concealed carry licenses reflects better, not worse, tailoring than the blanket prohibitions we have previously upheld.

Indeed, much the same reasoning led us to reject a Second Amendment challenge in *Horsley*, 808 F.3d 1126. The plaintiff there challenged the constitutionality of Illinois's Firearm Owners Identification Card Act. Under that statute, an 18- to 20-year-old who cannot obtain her parents' consent to possess a firearm may appeal to the Director of the Illinois State Police for a hearing. 430 ILCS §§ 65/8(b), 65/10(a). The Director, in turn, may grant the application if the applicant establishes, among other things, that she "will not be likely to act in a manner dangerous to public safety" and that granting her application "would not be contrary to the public interest" or federal law. *Id.* § 65/10(c). In upholding the law under intermediate scrutiny, we emphasized that the statute allowed for an "individualized assessment"—both by an applicant's parents and by the Director of the State Police—that distinguished it from the type of "blanket ban" struck down in *Heller* and other cases. *Horsley*, 808 F.3d at 1131–34. This reasoning applies here. The Board conducted an individualized assessment to determine whether White posed a danger to himself or others or a threat to public safety. This individualized assessment of dangerousness fits closely with Illinois's goal of preventing dangerous persons from carrying concealed firearms in public.

White insists that the Concealed Carry Act creates a de facto lifetime ban on his right to carry concealed firearms in public for self-defense. But even if it would be unconstitutional for Illinois to ban White from ever carrying a concealed firearm in public, that issue is not presented in this case. The text of the Concealed Carry Act does not create a permanent ban, and White has not explained why he thinks he will never be able to obtain a concealed carry license. *See Skoien*, 614 F.3d at 645 (rejecting a similar argument because the statute "in its normal application does not create a perpetual and unjustified disqualification"). Without more information, we are unwilling to assume that White will never be able to obtain a concealed carry license in the future. *See Berron v. Ill. Concealed Carry Licensing Rev. Bd.*, 825 F.3d 843, 846 (7th Cir. 2016) ("A federal court should not assume that the state will choose the unconstitutional path when a valid one is open to it.").

Thus, we reject White's as-applied challenge to the Concealed Carry Act. Because White has multiple criminal convictions and a 2012 arrest, we have no occasion to address whether or under what circumstances Illinois could constitutionally deny someone a concealed carry license based solely on decades-old arrests or unfounded allegations of gang affiliation. *See Skoien*, 614 F.3d at 645 ("A person to whom a statute properly applies can't obtain relief based on arguments that a differently situated person might present." (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987))). White's remaining arguments are facial attacks on the Concealed Carry Act, and therefore the state court judgment precludes them.

### III. Conclusion

For these reasons, we affirm the judgment of the district court while modifying it to reflect that ISRA's claims are dismissed without prejudice.