NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 18, 2022[*]
Decided January 24, 2022

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

Nos. 20-2556 & 21-1431

| | |
|---|---|
| JASON SMITH<br>    *Plaintiff-Appellant,* | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | Nos. 1:19-cv-01539 & 1:18-cv-08075 |
| TIMOTHY C. EVANS, et al.,<br>    *Defendants-Appellees.* | Gary Feinerman,<br>*Judge.* |

**O R D E R**

Jason Smith, a former probation officer for Cook County, appeals adverse judgments in two suits in which he alleged that County, City of Chicago, and union officials violated his rights under federal and state laws. Smith contends that, because of

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

his race (African American) and his advocacy for African-American workers, the defendants interfered with his work at the County and the City. The district court rejected some of Smith's claims for failure to exhaust properly by filing the required administrative charge with the Equal Opportunity Employment Commission, and others for failure to state a legal claim or provide triable evidence. That court's reasoning was correct, and we affirm.

## Background

Smith worked as a probation officer with the Cook County Juvenile Probation and Court Services Department until 2018. Before he left the job, he was elected vice-president of his union. According to Smith, his county supervisors retaliated against his union-based opposition to workplace race discrimination by changing his work schedule and maligning him. These actions prompted him to resign in 2018 and to begin work with the City. After he resigned, he alleges, county workers falsely told the City that the County had fired him for disciplinary reasons. The City then fired him.

After filing with the EEOC a charge about the City's discharge, Smith filed these two suits. As relevant to this appeal, his first suit, No. 18 C 8075, claimed that, by the conduct just recounted, the Chief Judge of the Circuit Court of Cook County (who supervises the probation department), the City of Chicago, his union, and agents of each, violated his First and Fourteenth Amendment rights, *see* 42 U.S.C. § 1983, and the Illinois Whistleblower Act, 740 ILCS 174/1.

Smith's second suit, No. 19 C 1539, raises similar claims. As in the first suit, he alleged that the Office of the Chief Judge and Smith's union violated his rights under the First and Fourteenth Amendment and the Illinois Whistleblower Act. He added that they also violated the Illinois Civil Rights Act, 740 ILCS 23/5(b), and Titles VI and VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000d, 2000e. He also claimed that the Office of the Chief Judge defamed him and violated his rights under the Illinois Slander and Libel Act, 740 ILCS 145/1. A month after filing his second suit, Smith amended the complaint in his first lawsuit so that it too contained claims under Title VI and VII, the Illinois Civil Rights Act, and Slander and Libel Act against these defendants.

The two cases were assigned to the same district judge. With the exception of some claims against the City in the first suit, the court rejected all of Smith's claims in that suit. The judge dismissed his Title VII claims against the Office of the Chief Judge because Smith had not included notice of them, as is required by administrative

exhaustion, in his EEOC charge. He also failed to state a claim either under the Fourteenth Amendment against that Office for depriving him of his job (because he resigned voluntarily) or under the First Amendment for interfering with his work (because the interference was not severe). The union, the district court continued, was entitled to summary judgment: no evidence suggested that it materially harmed Smith in violation of Title VII, and because it is not a state actor, it did not offend the Constitution. The court then ruled that the state-law claims had procedural defects. With only claims against the City remaining in the first suit, and to facilitate an appeal of the adverse rulings, the court certified for appeal under FED. R. CIV. P. 54(b) the partial judgment in the first suit. In the second suit, the court invited Smith to amend his complaint. He did, reiterating his earlier factual allegations. The court then dismissed the second suit as claim-precluded in light of the adverse rulings in the first suit.

## Discussion

We have consolidated Smith's appeals and begin by clarifying their scope. Smith has preserved challenges to the rulings on his: (1) Title VII and First and Fourteenth Amendment claims against the Office of the Chief Judge and the union in the first suit; (2) state-law claims in the first suit; and (3) claims in his second suit rejected on claim-preclusion grounds. Any other contentions not developed on appeal are abandoned. *See* FED. R. APP. P. 28; *DiPerna v. Chicago Sch. of Pro. Psychology*, 893 F.3d 1001, 1006 n.7 (7th Cir. 2018). We do not discuss Smith's claims against the City, because they are still pending in the district court in the first suit and are part of yet another appeal, No. 21-1544, which is not consolidated with this one.

Regarding his claims against the Office of the Chief Judge in the first suit, Smith challenges the dismissal of his Title VII claims for lack of administrative exhaustion. Before a plaintiff may bring a Title VII claim in federal court against a defendant, the plaintiff must exhaust the claim administratively by filing with the EEOC a charge of discrimination against that defendant. *See* 29 C.F.R. § 1601.28. Smith brought a charge to the EEOC against *the City* for acting against him after he left his job with the County; but his first suit also complained of actions by the Office of the Chief Judge, an unrelated and distinct party not mentioned in the EEOC charge. Smith's claim against the Office of the Chief Judge was not reasonably likely to have been developed by an investigation into Smith's charge against the City. *See Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004-05 (7th Cir. 2019) (the charge and the complaint must "at minimum" describe the same conduct and same parties). The district court thus correctly ruled that Smith did not exhaust his claims against the Office of the Chief Judge because they were not

"within the scope" of the EEOC charge. *See Chicago Tchrs. Union v. Bd. of Educ. of the City of Chicago*, 14 F.4th 650, 657 (7th Cir. 2021) (citing *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 527 (7th Cir. 2003).

The district court also properly rejected the First and Fourteenth Amendment claims against the Office of the Chief Judge for failure to state a claim. Smith admits that he voluntarily left his job with that Office in 2018 for a job with the City. This admission fatally undermines a Fourteenth Amendment claim that the Office deprived Smith of a protected interest in his employment. *See Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 237 (7th Cir. 2014), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). Smith also contends that, before he left his county job, supervisors there interfered with his work (by changing his scheduling and criticizing him) in retaliation for his union-based advocacy. But he does not develop a credible argument on appeal that this alleged interference was so severe that it would deter a reasonable worker from advocacy. Without such an argument, he has not stated a First Amendment claim. *See Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 623 (7th Cir. 2012).

That brings us to Smith's claims against the union, which fail for several reasons. We begin with his claim under Title VII, which ended at summary judgment. Smith argues that the union materially harmed his employment by not compelling arbitration of his grievance about his discharge from the City. But he did not dispute evidence that the union pursued arbitration on his behalf shortly after his discharge. In any case he offered no evidence that discriminatory animus motivated the union. *See Green v. Am. Fed'n of Tchrs./Illinois Fed'n of Tchrs. Loc. 604*, 740 F.3d 1104, 1107 (7th Cir. 2014). Smith responds that the union's agents failed to communicate promptly the status of Smith's grievance to him, but Smith has not explained how the delay materially harmed him. The district court also properly dismissed Smith's First and Fourteenth Amendment claims against the union. Those claims require state action, and Smith did not allege that his union is a state actor. *See Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815–16 (7th Cir. 2009).

The district court also appropriately dismissed Smith's claims under Illinois law. *See Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019). With the failure of Smith's federal claims, the court had the discretion to decline to exercise supplemental jurisdiction over purely state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Coleman*, 925 F.3d at 351. Although the district court ruled that the state-law claims suffered from other procedural defects, there is no priority among reasons not to reach the merits of a claim. *See Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007).

Finally, we agree with the district court that claim preclusion barred Smith's second suit. The doctrine applies because the second suit arose out of the same operative facts as his first one. *See White v. Illinois State Police*, 15 F.4th 801, 809 (7th Cir. 2021) (looking to Illinois law). The doctrine bars not only the claims Smith raised in his first suit but any claims that he could have raised there, such as the claim he proposed in the second suit under 42 U.S.C. § 1985 based on the same facts as his § 1983 claims in the first case. *See Scholz v. United States*, 18 F.4th 941, 952–53 (7th Cir. 2021) (surveying cases). Moreover, the district court, having invited, accepted, and considered an amended complaint in the second case that advanced no viable claims, reasonably ruled that further amendments would be futile. That court therefore had no duty to accept another amended complaint. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, 15 F.4th 831, 835 (7th Cir. 2021).

AFFIRMED